UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

BRISTOL PRESERVATION, LLC,          )
                                    )
            Plaintiff,              )
                                    )
v.                                  )          No.:   2:16-CV-360-TAV-MCLC
                                    )
IGC-BRISTOL, LLC, *et al.*,         )
                                    )
            Defendants.             )

## MEMORANDUM OPINION AND ORDER

This civil case is before the Court on plaintiff Bristol Preservation, LLC's[1] Motion to Remand [Doc. 13], defendant Knight 39 Holdings, LLC's Motion to Dismiss [Doc. 9], and plaintiff's Motion to Dismiss Counterclaims [Doc. 15]. The parties have filed various responses and replies to the pending motions [Docs. 17, 21, 22, 23, 24, 25, 26]. For the reasons discussed herein, the Court will deny plaintiff's Motion to Remand [Doc. 13], grant in part and deny in part Knight 39's Motion to Dismiss [Doc. 9], and grant plaintiff's Motion to Dismiss Counterclaims [Doc. 15].

## I.      Background

This case involves a dispute over a golf course lease. According to the complaint, plaintiff is the owner of the Country Club of Bristol ("the Country Club") [Doc. 1-1 p. 5]. On or about July 1, 2015, plaintiff entered into a lease agreement ("the Lease Agreement") with defendant IGC-Bristol Country Club, LLC ("IGC-Bristol"), in which IGC-Bristol agreed to

---

[1] The Court notes that defendant IGC-Bristol, LLC has filed counterclaims against Bristol Preservation. For the sake of clarity, the Court will refer to Bristol Preservation, LLC as plaintiff as opposed to plaintiff/counter-defendant.

lease a portion of the Country Club for a ten-year-term [*Id.*]. Defendant Integrity Golf Company, LLC ("Integrity Golf") executed a Guaranty of Lease agreement ("Guaranty Agreement") in which it guaranteed IGC-Bristol's obligations under the Lease Agreement [*Id.* at 6]. The Lease Agreement contained a forum selection clause, which states:

> The venue of any suit or proceeding brought for the enforcement of or otherwise with respect to [the Lease Agreement] shall always be lodged in the State Courts of the Second Judicial Circuit in and for Sullivan County, Tennessee at Bristol; or if the Circuit Court does not have jurisdiction, then before the United States District Court for the Eastern District of Tennessee (Greenville Division); or if neither of such courts shall have jurisdiction, then before any other court sitting in Sullivan County, Tennessee, having subject matter jurisdiction, regardless of whether, under any applicable principal of law, venue may also be properly lodged in the courts of any other federal, state or county jurisdiction [Doc. 10-1 p. 31].

The Lease Agreement also contained the following terms:

> If Tenant is any entity, any change to the structure of such entity or any disposition(s) of any of the interests therein by sale, assignment, operation of law or otherwise, or any change in the power to vote the interests therein, will be a prohibited assignment of this Lease requiring Tenant to obtain Landlord's prior consent [*Id.* at 19–20].

> Default by Landlord: The occurrence of any one of the following events shall constitute a default by Landlord under this Lease:

> (a) If Landlord shall fail to fully and completely perform its duties and obligations under this Lease and such failure is not cured within thirty (30) days after receive of notice from Tenant advising Landlord of such default . . . [*Id.* at 22].

When the parties executed the Lease Agreement, IGC-Bristol was owned by Integrity Golf, but Integrity Golf later divested or otherwise sold its interest in IGC-Bristol to defendant Knight 39 Holdings, LLC ("Knight 39") [Doc. 1-1 p. 12].

Approximately one year after the parties entered into the Lease Agreement, on or about July 1, 2016, IGC-Bristol failed to make a timely rent payment [*Id.* at 8]. Subsequently

thereafter, on July 15, 2016, W. Jack Davis, II, Chairman and President of Knight 39, sent an email to plaintiff stating "we think the best result is for [plaintiff] to own and operate [the Country Club] as [it] wants a number of things done that a tenant simply can't do" [*Id.*]. Knight 39 is the sole member of IGC-Bristol, and plaintiff alleges that Knight 39 controlled IGC-Bristol at this time [*Id.* at 20]. IGC-Bristol contends that plaintiff had continuously interfered with its rights of quiet enjoyment up to this time, in part by requiring IGC-Bristol to change the name of the Country Club to "the Olde Tennessean," a name change which resulted in trademark infringement litigation [Doc. 11 p. 23].

On July 21, 2016, plaintiff sent IGC-Bristol written notice demanding payment of the unpaid rent [*Id.*]. Because Integrity Golf was a guarantor of IGC-Bristol's obligations, plaintiff also sent notice to Integrity Golf [*Id.* at 9]. On or about July 27, 2016, an individual named Paul Fleming, identified in his email as Chief Executive Officer of Knight 39, sent an email to plaintiff stating "[o]ur operation of [the Country Club] will cease at close of business Friday July 29th" [*Id.*]. Shortly thereafter IGC-Bristol and/or Knight 39, through its attorney, advised plaintiff that it would cease operation of the Country Club at the close of business on July 31, 2016 [*Id.*]. Plaintiff alleges that IGC-Bristol and Knight 39 then wrongfully abandoned the County Club on the evening of July 31, 2016 [*Id.* at 10].

Plaintiff contends that neither IGC-Bristol nor Knight 39 provided notice to the members of the Country Club prior to ceasing operations [*Id.*]. Additionally, plaintiff alleges upon information and belief that membership fees, deposits, and other monies have been paid and/or will be paid to IGC-Bristol and/or Knight 39 for services that have occurred or will occur after the abandonment of the Country Club [*Id.*].

Plaintiff filed this lawsuit in the Law Court for Sullivan County, Tennessee, bringing various claims against IGC-Bristol, Integrity Golf, and Knight 39. Defendants removed the case to this Court, and IGC-Bristol filed several counterclaims against plaintiff. Knight 39 has filed a motion to dismiss all claims asserted against it, and plaintiff has moved both to remand this case back to the Sullivan County Law Court, and also to dismiss IGC- Bristol's counterclaims. The Court will first address the Motion to Remand, and then will turn to the motions to dismiss.

## II.     Motion to Remand

The Court first turns to plaintiff's Motion to Remand [Doc. 13]. In support of this motion, plaintiff argues that remand is warranted because of the Lease Agreement's forum selection clause. Specifically, plaintiff contends that the forum selection clause prohibited defendants' removal of this case from state to federal court.

As an initial point, the Court notes that the statutory right of removal of a case from state to federal court may be waived, but the waiver must be "clear and unequivocal." *See Cadle Co. v. Reiner, Reiner & Bendett, P.C.*, 307 F. App'x 884, 886 (6th Cir. 2009). While "general principles of contract interpretation are used to determine whether the right to remove has been waived" by a forum selection clause, district courts within this circuit have indicated that "the Sixth Circuit has established a higher threshold for finding waiver of the right of removal than have other circuits." *See Chrysler Grp., LLC v. Eagle Auto-Mall Corp.*, No. 14-12964, 2014 WL 5092903, at *1 (E.D. Mich. Oct. 10, 2014) (citation omitted). In particular, "a clause that does not even mention either removal or the party seeking to remove cannot be

a clear waiver of removal." *See EBI-Detroit, Inc. v. Detroit*, 279 F. App'x 340, 349 (6th Cir. 2008).

> In this case, the forum selection clause in the Lease Agreement states:
>
> The venue of any suit or proceeding brought for the enforcement of or otherwise with respect to [the Lease Agreement] shall always be lodged in the State Courts of the Second Judicial Circuit in and for Sullivan County, Tennessee at Bristol; or if the Circuit Court does not have jurisdiction, then before the United States District Court for the Eastern District of Tennessee (Greenville Division); or if neither of such courts shall have jurisdiction, then before any other court sitting in Sullivan County, Tennessee, having subject matter jurisdiction, regardless of whether, under any applicable principal of law, venue may also be properly lodged in the courts of any other federal, state or county jurisdiction [Doc. 10-1 p. 31].

Notably, the forum selection clause neither specifically mentions a waiver of the right of removal, nor any particular defendant, and thus cannot constitute a "clear waiver of removal." *See EBI-Detroit*, 279 F. App'x at 349.

Furthermore, the Court finds the case *Chrysler Group, LLC v. Eagle Auto-Mall Corp.* instructive. In that case, the district court found that a forum selection clause which stated only that a claim must be "filed" in state court was insufficient to constitute a waiver of the right to remove. *See Chrysler Grp.*, 2014 WL 5092903, at *4. The district court emphasized that the clause "does not contain any language, as is required in this Circuit, which would clearly indicate that the right to remove is waived." *See id.* While the clause at issue in the instant case states that venue shall always be "lodged" in state court as opposed to "filed," Black's Law Dictionary defines lodged as filed. BLACK'S LAW DICTIONARY (10th ed. 2014). Therefore, this case is like *Chrysler Group* in that the forum selection clause states only that the claim must be filed/lodged in state court, but makes no mention of whether the case may then be removed. The Court agrees with the *Chrysler Group* court that this language

5

does not rise to the level of a clear and unequivocal waiver of the right to remove. *See Cadle Co.*, 307 F. App'x at 886.

Plaintiff argues that the fact that the forum selection clause contemplates a federal forum in the event that the state court does not have jurisdiction indicates that "the parties contemplated, considered, and rejected the possibility that any dispute . . . would be litigated . . . in federal court unless and only if an available state court lacked subject matter jurisdiction" [Doc. 24 p. 2]. The forum selection clause, however, speaks only in terms of the suit being in the federal forum in the event that it may not be lodged in the state court forum. As the Court has already noted, lodged means filed, and the clause says nothing about the ability of the defendants to remove the case from where it is initially lodged/filed. Indeed, this case was initially lodged in state court consistent with the forum selection clause. Therefore, this argument is not well-taken.

In sum, the Court finds that the forum selection clause does not constitute a clear and unequivocal waiver of the right to remove, and as such, the Court will deny plaintiff's motion to remand.

## III.    Motions to Dismiss

The Court next turns to plaintiff's and Knight 39's motions to dismiss. The Court will first discuss the standard of review applicable to the motions, and then will analyze each motion to dismiss.

Federal Rule of Civil Procedure 8(a) sets out a liberal pleading standard. To survive a motion to dismiss, a complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief, 'in order to give [the opposing party] fair notice

of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims based on fraud are subject to the heightened requirements of Rule 9(b), which requires that a plaintiff plead the circumstances constituting fraud "with particularity." Fed. R. Civ. P. 9(b).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

### A.     Knight 39's Motion to Dismiss

In the complaint, plaintiff raises the following claims against Knight 39: 1) Unlawful Detainer; 2) Unjust Enrichment; 3) Trespass; 4) Intentional Interference with Business

Relationship; 5) Procurement of Breach of Contract; 5) Piercing the Corporate Veil; and 6) Injunctive Relief. Knight 39 moves the Court to dismiss each of these claims.

### 1. Unlawful Detainer

Plaintiff's claim of unlawful detainer against Knight 39 is based on its allegation that Knight 39 possessed the County Club during IGC-Bristol's lease term without a contractual right to do so.

"Where a tenant, or someone in collusion with a tenant willfully and without force, holds over the possession from the landlord, he is guilty of unlawful detainer." *Morrison v. Smith*, 757 S.W.2d 678, 680 (Tenn. Ct. App. 1988). Where a tenant or someone in collusion with the tenant remains in possession prior to the tenancy ending, however, the "possession belongs to the tenant" and there is no liability to the landowner for unlawful detainer. *See id.* (citing *Smith v. Holt*, 193 S.W.2d 100, 102 (Tenn. Ct. App. 1945)).

In this case, plaintiff does not allege that Knight 39 remained in possession subsequent to the ending of the tenancy. Rather, plaintiff alleges that Knight 39 wrongfully possessed the Country Club during the pendency of IGC-Bristol's tenancy despite not having a contractual right to do [*See* Doc. 17 p. 9 ("Bristol Preservation alleges that Knight 39 wrongfully possessed the Country Club during IGC-Bristol's lease term . . . .")]. Because Knight 39's alleged wrongful possession occurred during the term of IGC-Bristol's tenancy, Knight 39 cannot be liable to plaintiff for unlawful detainer. As such, the Court will dismiss plaintiff's unlawful detainer claim against Knight 39.

## 2. Unjust Enrichment

Plaintiff also raises a claim of unjust enrichment against Knight 39. Specifically, plaintiff contends that Knight 39 occupied, managed, and/or operated the Country Club without a lease agreement. Because Knight 39 retained the benefit of the commercial lease, and because Knight 39 allegedly refused to pay plaintiff for that benefit, plaintiff asserts that Knight 39 is liable for unjust enrichment.

"Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not otherwise exist." *See Spahr v. Leegin Creative Leather Prod., Inc.*, No. 2:07-cv-187, 2008 WL 3914461, at *14 (E.D. Tenn. Aug. 20, 2008). The elements that a plaintiff must establish to succeed on a claim of unjust enrichment are: 1) a benefit conferred by the plaintiff upon the defendant; 2) appreciation of the benefit by the defendant; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *See id.* (citing *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154–55 (Tenn. 1966)). Furthermore, in order to succeed on an unjust enrichment claim "the plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract." *See id.* A plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity, however, if the pursuit of the remedies would be futile. *See id.; see also Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 526 (Tenn. 2005).

In this case, plaintiff fails to allege in the complaint that it has exhausted all remedies against IGC-Bristol or Integrity Golf, the entities with which it has privity of contract by virtue

of the Lease Agreement and Guaranty Agreement. Furthermore, plaintiff has not alleged that

pursuit of remedies against these entities would be futile. *See id.* Indeed, considering that

IGC-Bristol and Integrity Golf are also defendants in this case, it appears that plaintiff does

not believe that a pursuit of remedies against these entities would be futile. Therefore, because

plaintiff has neither pled facts indicating either that it has exhausted its remedies against IGC-

Bristol or Integrity Golf, nor indicated that pursuit of such remedies would be futile, plaintiff

has failed to plead a plausible claim of unjust enrichment against Knight 39. As such, the

Court will dismiss plaintiff's claim of unjust enrichment against Knight 39.

### 3. Trespass

Plaintiff also contends that Knight 39 is liable for trespass because it entered and

operated the Country Club without plaintiff's permission. Under Tennessee law, trespass

constitutes "the unauthorized entry upon another's real property." *See Arbuckle v.*

*Chattanooga*, 696 F. Supp. 2d 907, 931 (E.D. Tenn. 2010).

The complaint acknowledges, however, that plaintiff leased the Country Club to IGC-

Bristol for a term of ten years [*See* Doc. 1-1 p. 5]. This lease provided IGC-Bristol with the

right of possession for the Country Club, and granted it "control over the property against the

lessor and all the world." *See Doramus v. Rogers Grp., Inc.*, No. M1998-00918-COA-R3-CV,

2001 WL 196974, at *8 (Tenn. Ct. App. Feb. 28, 2001). Therefore, as the lease granted IGC-

Bristol control of the Country Club during the lease term, any alleged action for trespass

against Knight 39 would belong to IGC-Bristol, not to plaintiff. Plaintiff cites to no authority,

and the Court is not aware of any, which permit the owner of property to maintain a trespass

claim where the owner has leased that property to a tenant. *See* 75 Am. Jur. 2d Trespass § 31

(2016) ("A landlord who has granted possession to a tenant for a definite term does not have an immediate right of possession and may not maintain an action for trespass during the term of the lease."). As such, the Court will dismiss plaintiff's claim for trespass against Knight 39.

### 4. Intentional Interference with Business Relationship

Plaintiff also raises a claim of intentional interference with business relationship against Knight 39, arguing that Knight 39 "intentionally caused the relationship between Bristol Preservation and IGC-Bristol to end" [Doc. 1-1 p. 19].

In order to establish a claim for the tort of intentional interference with a business relationship against Knight 39, plaintiff must establish: 1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; 2) Knight 39's knowledge of that relationship; 3) Knight 39's intent to cause the breach or termination of the business relationship; 4) Knight 39's improper motive or improper means; and 5) damages resulting from the tortious interference. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002). Significantly, this tort is only applicable for interference with non-contractual business relationships. *See e.g., Crouch v. Pepperidge Farm, Inc.*, 424 F. App'x 456, 461 (6th Cir. 2011) ("But this tort protects non-contractual business relationships, so we will not apply it to the contractual relationship . . . ."); *see also Trau-Med*, 71 S.W.3d at 698–701, 701 n.4.

In this case, plaintiff alleges that Knight 39 interfered with its business relationship with IGC-Bristol. Because plaintiff and IGC-Bristol had entered into a contractual Lease Agreement for the Country Club, however, the relationship with which Knight 39 allegedly interfered was a contractual relationship. Therefore, because the tort of intentional interference

11

with business relationship does not apply to interference with contractual relationships, plaintiff may not sustain this cause of action against Knight 39. *See Crouch*, 424 F. App'x at 461. As such, the Court will dismiss plaintiff's intentional interference with business relationship claim against Knight 39.

### 5.     Procurement of Breach of Contract

The Court next turns to plaintiff's procurement of breach of contract claim. Plaintiff alleges that Knight 39 procured IGC-Bristol's breach of its obligations under the Lease Agreement by facilitating changes in IGC-Bristol's organizational structure without obtaining plaintiff's consent as required by the Lease Agreement.

This claim requires plaintiff to prove the following elements: "1) There must be a legal contract; 2) the wrongdoer must have knowledge of the existence of the contract; 3) there must be an intention to induce its breach; 4) the wrongdoer must have acted maliciously; 5) there must be a breach of the contract; 6) the act complained of must be the proximate cause of the breach of contract; and 7) there must have been damages resulting from the breach of contract." *Lick Branch Unite, LLC v. Reed*, No. 3:13-cv-203, 2014 WL 546696, at *15 (E.D. Tenn. Feb. 10, 2014) (quoting *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997)).

In its motion to dismiss, Knight 39 argues that the Court should dismiss plaintiff's procurement of breach of contract claim because plaintiff has not sufficiently pled that Knight 39 acted maliciously. While malice is an essential element for this claim, malice does not require "ill will or spite towards the injured party." *See Marshall Motor Homes Intern., Inc. v. Newmar Corp.*, No. 3:01-cv-397, 2003 WL 23333579, at *30 (E.D. Tenn. Dec. 5, 2003).

Rather, the "intentional commission of a harmful act without justifiable cause is the equivalent of legal malice." *See id.*

The complaint alleges that, during the pendency of the lease term, Knight 39 took over ownership of IGC-Bristol from Integrity Golf. Such a change in IGC-Bristol's organizational structure without plaintiff's approval would harm plaintiff by causing IGC- Bristol to violate the terms of the Lease Agreement. Based on the allegations in the complaint, particularly the communications between plaintiff and certain individuals identified as Knight 39 employees regarding the Country Club, the Court may also reasonably infer that Knight 39's participation in changing IGC-Bristol's organizational structure was intentional. *See Twombly*, 550 U.S. at 570. Taking plaintiff's allegations as true, as it must in ruling on a motion to dismiss, the Court finds that this allegation adequately pleads the "intentional commission of a harmful act without justifiable cause," and thus, adequately pleads malice against Knight 39. *See id.*

Knight 39 also argues that the complaint does not adequately allege that plaintiff suffered damages proximately caused by the breach of contract. This argument is not well-taken. The complaint alleges that IGC-Bristol— an entity which Knight 39 admits it is the sole member of — changed its organizational structure, and subsequently abandoned its contractual obligations one year into a ten-year lease. Plaintiff also alleges that IGC-Bristol failed to make at least one rent payment. Based on these allegations, the Court may reasonably infer that plaintiff suffered damages as a result of the alleged breaches of contract, and as such, plaintiff has adequately pled that the breach proximately caused it to suffer damages.

In sum, the Court finds that plaintiff has adequately pled a plausible procurement of breach of contract claim against Knight 39, and as such the Court will deny Knight 39's motion insofar as it seeks to dismiss this claim.[2]

### 6.    Piercing the Veil

Plaintiff also asks the Court to pierce the veil and hold Knight 39 liable for IGC-Bristol's breaches of the Lease Agreement. Plaintiff argues that piercing the veil is appropriate in this case because Knight 39 "dominated and controlled IGC-Bristol's finances and its policy and business practices relating to the County Club of Bristol such that IGC-Bristol had no separate mind, will, or existence of its own" [Doc. 1-1 p. 20].

As an initial point, the Court notes that IGC-Bristol is a Limited Liability Company (an "LLC"), in which Knight 39 is the sole member. "Under Tennessee law, a member or holder of a financial interest in an LLC does not have any personal obligation and is not otherwise personally liable for the acts, debts, liabilities, or obligations of the LLC." *NVK Spinning Co. v. Nichols*, No. 12-2904, 2014 WL 28831, at *4 (W.D. Tenn. Jan. 2, 2014). In certain situations, however, a court may permit a plaintiff to pierce the veil in order to impose personal liability on the member of an LLC for the actions of the LLC. *See id.*

"Tennessee law strongly disfavors piercing the . . . veil." *Id.* Although whether or not a court will permit veil piercing "depends upon the particular circumstances of each case," a

---

[2] The Court notes that Knight 39 also asserts in its motion to dismiss that all of plaintiff's claims should be dismissed because Knight 39 was not a party to the Lease Agreement or Guaranty Agreement. This argument does not appear to be applicable to the procurement of breach of contract claim because in this claim Knight 39 is not being sued under the Lease Agreement or the Guaranty Agreement. Rather, Knight 39 is being sued for procuring IGC-Bristol's breach of its contractual obligations.

court will only permit it in "extreme circumstances." *See Edmunds v. Delta Partners, LLC*, 403 S.W.3d 812, 829 (Tenn. Ct. App. 2012); *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991); *see also Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 215 (Tenn. 2012) (noting that the equities must "substantially favor" the party seeking to pierce the veil, and that the presumption of separate identity "should be set aside only with great caution and not precipitately").

In determining whether to permit a plaintiff to pierce the veil, Tennessee courts consider the following factors:

> 1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arm's length relationships among related entities. *Fed. Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984).

In addition to considering these factors, the Sixth Circuit has stated that Tennessee law "requires an element of fraud in order to pierce a corporate veil." *See IBV Mfg. Co. v. Velsicol Chem. Corp.*, No. 97-5340, 1999 WL 486615, at *4 (6th Cir. Jul. 1, 1999); *see also Se. Tex. Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 676 (6th Cir. 2006) (stating that in order to pierce the veil a plaintiff must sufficiently allege "fraud or similar injustice").

Knight 39 argues that plaintiff cannot sustain a piercing the veil claim because it has not adequately alleged facts claiming that IGC-Bristol was used to work a fraud or similar injustice. Plaintiff counters by arguing that it has pled a scheme to defraud by alleging that

15

Knight 39 took ownership of IGC-Bristol in knowing violation of the Lease Agreement, that Knight 39 operated the Country Club in knowing violation of the Lease Agreement, and that Knight 39 continues to collect payments from operations of the Country Club even though IGC-Bristol abandoned the Country Club.

Upon consideration of the complaint and the parties' arguments, the Court finds that plaintiff has not adequately alleged the extreme circumstances necessary to support a piercing the veil claim against Knight 39. *See Schlater*, 833 S.W.2d at 925. As an initial point, the Court notes that while plaintiff alleges that Knight 39 used IGC-Bristol to "commit an unjust act on [plaintiff's] rights," a majority of plaintiff's allegations in the complaint, and in its response to Knight 39's motion to dismiss, center around IGC-Bristol's alleged breaches of the Lease Agreement [*See* Doc. 17 p. 7]. In particular, plaintiff alleges that Knight 39 took ownership of IGC-Bristol in violation of the Lease Agreement, and operated the Country Club in violation of the Lease Agreement. In order to justify piercing the veil, however, the fraud or injustice alleged "must be more than the breach of contract alleged in the complaint." *See Se. Tex. Inns*, 462 F.3d at 679. Therefore, to the extent that plaintiff argues that piercing the veil is warranted due to IGC-Bristol's allegedly unjust violation of plaintiff's contractual rights, this argument is not well taken.[3]

Furthermore, while the complaint also alleges that Knight 39's control of IGC-Bristol was "used to commit fraud," the only specific factual allegations of an alleged scheme to defraud are that Knight 39 has received or will receive payments for services and events

_____

[3] Additionally, to the extent that plaintiff argues that Knight 39 induced IGC-Bristol to breach its contractual obligations, these actions are likely to be covered by plaintiff's procurement of breach of contract claim.

occurring after IGC-Bristol's abandonment of the lease [*See* Doc. 1-1 p. 10]. These factual allegations are pled upon information and belief, providing no details of any specific payments received by Knight 39, or the basis for plaintiff's belief that Knight 39 has received or will receive these payments [*Id.*]. Such conclusory allegations, unsupported by specific facts, are insufficient to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applicable for allegations of fraud. *See Harbor Thirteen Mile-20600 LLC v. Emp. Ret. Plan of Consol. Elec. Distrib., Inc.*, No. 15-14066, 2016 WL 1665158, at *3 (E.D. Mich. Apr. 27, 2016) ("Allegations of fraud cannot be based upon information and belief, except where the relevant facts lie exclusively within the knowledge and control of the opposing party, and even then, the plaintiff must plead a particular statement of facts upon which his belief is based.").[4]

Plaintiff also appears to argue that veil piercing is warranted in this case because Knight 39 acquired control of IGC-Bristol from Integrity Golf after Integrity Golf had guaranteed IGC-Bristol's Lease Agreement obligations. The Court does not find that this fact supports piercing the veil, however, because there is no indication that any transfer of IGC-Bristol's ownership from Integrity Golf to Knight 39 impacts Integrity Golf's possible liability to plaintiff under the Guaranty Agreement. Indeed, Integrity Golf is a defendant in this action, and plaintiff is seeking damages against Integrity Golf under a breach of guaranty agreement theory [*See* Doc. 1-1 p. 17].

---

[4] The Court notes that in its response brief plaintiff contends that "While wholly controlled by Knight 39, IGC Bristol diverted money from IGC-Bristol to [Knight 39] . . ." [Doc. 17 p. 7]. This allegation is not mentioned in the complaint, so the Court will not consider it in its consideration of the motion to dismiss.

In sum, because plaintiff has failed to adequately allege fraud or any similar injustice beyond breaches of the Lease Agreement, the Court finds that plaintiff has not alleged the extreme circumstances necessary to pierce the veil. *See Schlater v. Haynie*, 833 S.W.2d at 925.[5] As such, the Court will dismiss plaintiff's piercing the veil claim against Knight 39.[6]

### 7. Injunctive Relief

Finally, plaintiff also seeks injunctive relief against Knight 39. In particular, plaintiff asks that the Court enjoin Knight 39 from accepting or retaining any membership fees, tournament deposits, or other monies for services and events occurring after July 31, 2016 [Doc. 1-1 p. 21]. Plaintiff argues that the acceptance of such monies by Knight 39 "could have an untold impact on the reputation of the Country Club" [Doc. 17 p. 15].

---

[5] The Court notes plaintiff's argument that certain *Allen* factors support piercing the veil. Because plaintiff has failed to plead fraud or a similar injustice, the fact that several of the *Allen* factors may support piercing the veil is not sufficient to support a claim. *See IBV Mfg. Co.*, 1999 WL 486616, at *4. Indeed, while several of the *Allen* factors do appear to support piercing the veil, in particular that Knight 39 and IGC-Bristol appear to have overlapping employees, and that Knight 39 is the sole member of IGC-Bristol, Tennessee courts have held that similar facts are not alone sufficient to justify piercing the veil. *See, e.g., Marshall v. Jackson*, No. M2007-01764-COA-R3-CV, 2008 WL 5156312, at *6 (Tenn. Ct. App. Dec. 8, 2008) (noting that the fact that an individual held directorships with both companies is not in of itself sufficient to justify piercing the veil). Furthermore, plaintiff attempts to satisfy a number of the other *Allen* factors by making conclusory statements that merely recite the factors themselves. For instance, the complaint asserts that Knight 39 "undercapitalized IGC-Bristol," and "failed to maintain an arm's length relationship" with IGC-Bristol [Doc. 1-1 p. 15]. Such a recitation of the factors, supported only by conclusory statements that they are satisfied, does not support plaintiff's claim. *See Iqbal*, 556 U.S. at 678.

[6] Knight 39 appears to argue that a dismissal of the piercing the veil claim mandates a dismissal of all claims. Because each claim has different elements, and because plaintiff has adequately alleged the procurement of the breach of contract claim, this argument is not well-taken.

18

In order to attain a permanent injunction, a plaintiff must demonstrate: "1) that it has suffered an irreparable injury; 2) that remedies available at law, such as money damages, are inadequate to compensate for that injury; 3) that, considering the balance of the hardships . . . a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction." *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Knight 39 argues that the Court should dismiss plaintiff's claim for injunctive relief because the reputational injury alleged by plaintiff is speculative, and any potential harm to plaintiff is compensable by money damages.

Reputational damage can constitute irreparable harm not fully compensable by money damages, and thus, may serve as the basis for injunctive relief. *See Thompson v. Hayes*, 748 F. Supp. 2d 824, 832 (E.D. Tenn. 2010). While Knight 39 argues that any reputational damage in this case is speculative, the Court notes that plaintiff is not seeking a preliminary injunction, and as such, has not yet been put to the task of offering proof of reputational damage. Rather, at this stage in the proceedings plaintiff merely alleges in the complaint a claim for injunctive relief, and therefore must only state a claim under Rule 8(a). *See* Fed. R. Civ. P. 8(a). The Court finds that the allegations in the complaint, in particular the possibility that the acceptance of monies meant for the Country Club by Knight 39 could cause reputational damage to the Country Club, are sufficient to meet the burden under Rule 8(a).

The case cited by Knight 39 in support of its motion to dismiss, *Thompson v. Hayes*, does not undermine the Court's conclusions in this case. 748 F. Supp. 2d 824 (E.D. Tenn. 2010). In *Thompson*, this Court denied a request for a preliminary injunction based in part on a finding that the movant's allegations of reputational harm were speculative and unsupported

by the record. *Id.* at 832. In contrast, plaintiff in this case has not moved for a preliminary injunction, and there is of yet no developed record for the Court to consider in determining whether any reputational harm is speculative.

In sum, the Court finds that plaintiff has sufficiently alleged a plausible claim for injunctive relief sufficient to survive Knight 39's motion to dismiss. As such, the Court will deny Knight 39's motion insofar as it seeks to dismiss the injunctive relief claim.[7]

### 8.    Leave to Amend

The Court notes that in its response to Knight 39's motion to dismiss, plaintiff states: "to the extent that the Court is inclined to grant Knight 39's Motion to Dismiss, in whole or in part, [plaintiff] respectfully requests leave to file an Amended Complaint" [Doc. 17 p. 16]. The Court finds that this statement is not sufficient to constitute a motion to amend, and thus, the Court will decline to treat it as such. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (noting that "a request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend"); *New London Tobacco Mkt., Inc. v. Burley Stabilization Corp.*, Np. 3:13-cv-122, 2013 WL 2112290, at *3 (E.D. Tenn. May 15, 2013) ("A motion must be filed as a separate, freestanding document. For that reason alone the Court will deny leave to amend."). As such, to the extent that plaintiff seeks leave to amend the complaint by means of the sentence at the end of its response brief, the Court will deny that request.

---

[7] The Court notes that in its motion to dismiss Knight 39 represents that in the event that it receives any fees, deposits, or other monies, it will turn those funds over to plaintiff [Doc. 10 p. 15]. The Court does not find that it is appropriate to consider this unsworn representation in considering the motion to dismiss. Furthermore, turning over such monies to plaintiff would not necessarily redress any reputational damage.

In sum, the Court will grant in part Knight 39's motion to dismiss, in that it will dismiss all claims against Knight 39 except for the procurement of breach of contract claim and the injunctive relief claim. It will also deny plaintiff's request to file an amended complaint.

## B.      Plaintiff's Motion to Dismiss Counterclaim

The Court next turns to plaintiff's Motion to Dismiss Counterclaims [Doc. 15]. The Court notes that plaintiff purportedly moved pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6), but provides that it only moved under Rules 12(b)(1) and 12(b)(3) so as not to waive any arguments made in its motion to remand. As such, the Court will consider the motion to dismiss as one under Rule 12(b)(6). IGC-Bristol has asserted the following counterclaims against plaintiff: 1) Breach of Lease; 2) Indemnification; and 3) Constructive Eviction. The Court will address each counterclaim in turn.

### 1.      Breach of Lease

IGC-Bristol alleges that plaintiff breached the Lease Agreement by interfering with its right of quiet enjoyment, which is guaranteed by Section 3.3 of the Lease Agreement [Doc. 10-1 p. 6 ("Quiet Enjoyment- Provided Tenant timely pays Rent and performs the conditions and covenants herein contained, then Tenant shall and may peaceably and quietly enjoy the [Country Club].")]. IGC-Bristol contends that plaintiff interfered with this right of quiet enjoyment by pressuring IGC-Bristol into changing the County Club's name to the "Olde Tennessean," making a number of other "commercially unreasonable demands," and micromanaging IGC-Bristol's running of the Country Club [Doc. 25 pp. 2–3]. Plaintiff argues that this claim should be dismissed because IGC-Bristol never provided plaintiff with notice of any alleged breaches.

Under the terms of the Lease Agreement, plaintiff would be in default of the lease if it "fail[ed] to fully and completely perform its duties and obligations under [the Lease Agreement] and such failure is not cured within thirty (30) days after receipt of notice from Tenant advising Landlord of such default" [Doc. 10-1 p. 21].[8]  Therefore, in the event that plaintiff did not fulfill a contractual duty or obligation IGC-Bristol was required to provide plaintiff with notice of the deficiency and a thirty-day opportunity to cure.  *See In re Memphis-Friday's Assoc.*, 88 B.R. 830, 837 (W.D. Tenn. 1988) (noting that in Tennessee "a commercial lease is to be construed and enforced as written").

While IGC-Bristol does not appear to dispute that its breach of lease claim fails in the event that it did not provide plaintiff with notice, IGC-Bristol contends that it provided notice by means of W. Jack Davis II's July 15, 2016, email.  In this email, Davis informed plaintiff that the "best result [would be] for [plaintiff] to own and operate the Country Club . . . as [plaintiff] wants a number of things done that the tenant simply can't do" [Doc. 1-1 p. 8].  The Court finds, however, that this email is not sufficient to constitute the notice required by the Lease Agreement.  First, there is no indication that the email specifically identified which of plaintiff's activities interfered with IGC-Bristol's right of quiet enjoyment.  Second, even were this email to constitute adequate notice, IGC-Bristol abandoned the Country Club on July 31, 2016, sixteen days after Davis's email [*Id.* at 8].  Thus, IGC-Bristol did not provide plaintiff with the thirty days to cure provided for by the Lease Agreement.  Therefore, because IGC-Bristol failed to comply with the notice and opportunity to cure provisions of the Lease

---

[8] Tennessee courts and Black's Law Dictionary define "default" as "the omission or failure to perform a legal or contractual duty."  *See Hometown Folks, LLC v. S&B Wilson, Inc.*, No. 1:06-cv-81, 2008 WL 918519, at *11 (E.D. Tenn. Apr. 3, 2008).

Agreement, plaintiff did not default and IGC-Bristol may not bring a claim against plaintiff based on a breach of the Lease Agreement. *See St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn. Ct. App. 1986) ("In the absence of fraud or mistake, a contract must be interpreted and enforced as written . . . this Court . . . can merely construe the lease as written.").[9] As such, the Court will dismiss IGC-Bristol's counterclaim insofar as it asserts a claim based on breach of the Least Agreement.

## 2. Indemnification

IGC-Bristol next contends that the terms of the Lease Agreement obligate plaintiff to indemnify IGC-Bristol for any damages suffered by IGC-Bristol due to plaintiff's breach of the Lease Agreement. As the Court has already discussed, because IGC-Bristol failed to comply with the Lease Agreement's notice and opportunity to cure requirements, plaintiff did not default under the lease. Therefore, there are no damages for which IGC-Bristol may seek indemnification. As such, the Court will dismiss IGC-Bristol's indemnification counterclaim.

## 3. Constructive Eviction

Finally, IGC-Bristol brings a constructive eviction counterclaim against plaintiff. Constructive eviction may arise "from the improper conduct of the landlord in interfering with the [tenant's] enjoyment of the premises." *See Tenn-Tex Prop. v. Brownell-Electro, Inc.*, 778

---

[9] The Court notes that IGC-Bristol cites to the case *GTP Structures I, LLC v. Wisper II, LLC*, for the proposition that substantial compliance with a contractual notice requirement is sufficient in certain circumstances. 153 F. Supp. 3d 983, 990-92 (W.D. Tenn. 2015). Although *GTP Structures* is a case from a Tennessee district court, the district court in that case applies Florida law. *Id.* at 987. IGC-Bristol thus provides the Court with no authority for the proposition that as a matter of Tennessee law substantial compliance with a notice requirement is sufficient, and the Court declines to announce such a rule itself. *See Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999) ("If the contract is plain and ambiguous . . . the Court must interpret it as written . . .").

S.W.2d 423, 428 (Tenn. 1989). Landlord conduct that may rise to the level of constituting constructive eviction includes "threats of expulsion, attempts to lease to others, or unreasonable demands, insults, or assaults." *See id.* Such conduct, however, must "substantially interfere with the tenant's beneficial enjoyment of the premises, and the interference must be of a permanent nature." *See id.*

IGC-Bristol argues that plaintiff constructively evicted it by making a number of unreasonable demands and by attempting to lease the property to others during the course of IGC-Bristol's tenancy. IGC-Bristol supports this claim by providing specific examples of communications between plaintiff and IGC-Bristol [*See* Doc. 10-2]. In the counterclaim, however, IGC-Bristol asserts that the basis of its constructive eviction theory is that "plaintiff materially breached the Lease Agreement by interfering with IGC-Bristol's rights of quiet enjoyment as set forth in the Lease Agreement" [Doc. 11 p. 24]. As the Court has already noted, because IGC-Bristol did not provide plaintiff with notice and an opportunity to cure, plaintiff did not default under the Lease Agreement. Therefore, IGC-Bristol may not base its constructive eviction claim on the fact that plaintiff breached the Lease Agreement.

IGC-Bristol argues in its response brief that a breach of the lease agreement is not required for a landlord's conduct to rise to the level of constructive eviction, and that a tenant is not required to give notice of any breaches in order to state a claim of constructive eviction. As an initial point, the Court notes that this argument is contradicted by the counterclaim itself, which bases the constructive eviction claim on the fact that plaintiff breached the Lease Agreement by interfering with its rights of quiet enjoyment [*See* Doc. 11 p. 24]. Additionally, IGC-Bristol has not cited, and the Court is not aware, of any authority for the proposition that

a tenant may bring a constructive eviction claim based on activities that constitute a breach of the tenant's right of quiet enjoyment in a situation where the tenant has failed to comply with a lease provision that specifically provides for notice and the opportunity to cure any breaches of the right of quiet enjoyment. In fact, a number of other jurisdictions have found that even in the absence of a contractual notice requirement, a tenant is required to provide a landlord with notice and the opportunity to cure prior to bringing a constructive eviction claim. *See e.g., Mason-McDuffie Real Estate, Inc. v. Villa Fiore Dev., LLC*, 335 P.3d 211, 215 (Nev. 2014) ("Therefore, we hold that a commercial tenant alleging that it was constructively evicted must show . . . that it provided landlord notice of and a reasonable opportunity to cure the defect.").[10]

In sum, because IGC-Bristol did not comply with the notice and opportunity to cure provision of the Lease Agreement applicable to breaches of the right of quiet enjoyment, the Court finds that IGC-Bristol may not sustain the constructive eviction counterclaim. As such, the Court will dismiss IGC-Bristol's counterclaim insofar as it raises a constructive eviction claim against plaintiff.

---

[10] IGC-Bristol cites to the Tennessee Supreme Court decision *Tenn-Tex Properties v. Brownell-Elector* to support its argument that it need not show that plaintiff breached the lease in order to state a claim for constructive eviction, as well as its argument that it need not have provided plaintiff with notice of any alleged breaches. 778 S.W.2d 423. The Court has reviewed *Tenn-Tex*, and finds that the case does not support IGC-Bristol's arguments. First, there is no indication in *Tenn-Tex* that the tenants and landlord had entered into a lease agreement containing a term requiring notice and an opportunity to cure any breaches of the right of quiet enjoyment. Second, the constructive eviction in *Tenn-Tex* culminated in the landlord declaring the tenants in default and demanding accelerated rent payments, including rent not yet due under the terms of the lease agreement. *Id.* at 428. Thus, because the landlord in *Tenn-Tex* declared the tenant in default, notice to the landlord was not an issue that the Tennessee Supreme Court considered in *Tenn-Tex*. *See id.*

## IV. Conclusion

For the reasons discussed herein, the Court hereby **DENIES** plaintiff's Motion to Remand [Doc. 13]. The Court also **GRANTS in part and DENIES in part** Knight 39's Motion to Dismiss [Doc. 9], in that all claims against Knight 39 except for procurement of breach of contract and injunctive relief are hereby **DISMISSED**. The Court also **GRANTS** plaintiff's Motion to Dismiss Counterclaims [Doc. 15], in that all counterclaims asserted by IGC-Bristol against plaintiff are **DISMISSED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE